

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 24  P 4: 24

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GHULAM M. NASIM | CIVIL ACTION |
| VERSUS | NO. 04-2569 |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "R" (2) |

### FINDINGS AND RECOMMENDATION

Plaintiff, Ghulam M. Nasim, appearing pro se, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for retirement income benefits ("RIB") (also known as old age insurance benefits) under Title II of the Act. 42 U.S.C. §§ 405(g), 402(a). This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, plaintiff filed a timely memorandum of facts and law. Record Doc. No. 12. Defendant filed a timely opposition memorandum. Record Doc. No. 13. Nasim



filed a reply memorandum, titled "Plaintiff's Rebuttal Motion," without seeking leave of court to do so, as required by Local Rule 7.4. Record Doc. No. 14. Nonetheless, I have considered the memorandum.

I.   PROCEDURAL HISTORY

Nasim filed an application for RIB on May 26, 2000. (Tr. 43-45). After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 17, 2002. On January 31, 2003, the ALJ denied plaintiff's application. (Tr. 32-34). The Appeals Council denied review on October 31, 2003. (Tr. 24-27). The Appeals Council on June 15, 2004 and July 29, 2004 denied Nasim's requests to reopen the decision. (Tr. 4-5, 8-9).

The ALJ's decision became the final decision of the Commissioner for purposes of this court's review 60 days after Nasim received the Appeals Council's denial of review dated October 31, 2003. The record does not indicate that the Appeals Council granted any extension of time to file a civil action. Although plaintiff did not file this action until September 22, 2004, defendant does not argue that the complaint is untimely. Accordingly, defendant has waived any untimeliness argument. Slaughter-Cooper v. Kelsey Seybold Med. Group P.A., 379 F.3d 285, 288 n.4 (5th Cir. 2004); Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc., 332 F.3d 779, 790 n.6 (5th Cir. 2003).

II.  STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred by failing to find that Nasim had earned 16 additional work credits from part-time employment between 1965 and 1968.

B.  The ALJ violated plaintiff's due process rights because he granted plaintiff a 60-day extension of time to submit W-2 forms to document his part-time employment between 1965 and 1968, but he denied plaintiff's application for RIB before holding a scheduled re-hearing 60 days later.

III.  ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  The record shows that Nasim earned 16 quarters of coverage from foreign employment and earned 23 quarters of coverage from employment in the United States, totaling 39.

2.  Plaintiff needs 40 quarters of coverage to qualify for RIB.

3.  Nasim lacks the proper quarters of coverage for purposes of entitlement to RIB.

(Tr. 33-34).

IV.  ANALYSIS

A.  Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate

legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

    The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered eligible for RIB, plaintiff must show that he "is a fully insured individual (as defined in section 414(a) of this title) [and] has attained age 62." 42 U.S.C. § 402(a). Section 414(a) defines a fully insured individual in relevant part as

> any individual who had not less than--
> (1) one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, except that in no case shall an individual be a fully insured individual unless he has at least 6 quarters of coverage

Id. § 414(a).

B.  Factual Background

Plaintiff testified that he was born in Kashmir, India, in 1929 and practiced medicine and surgery in England and the United States for 36 years. He stated that he married Sarah Vero Reed, who was English, in London, England, in 1958 and that they were divorced in Baltimore, Maryland, in August 1968. (Tr. 182-83).

Nasim said that he and his wife came to the United States in June 1959. He testified that he became a permanent resident in the United States in 1968 and later became a naturalized United States citizen. (Tr. 184). He said that he and his wife had two sons who were born in 1960 and 1964. (Tr. 185-86).

Plaintiff testified that he began working in 1955 at a hospital in London, England, and continued working there until 1959. He said he was a thoracic surgical resident in

London for one year before coming to the United States. (Tr. 186). Nasim testified that he worked at St. Agnes Hospital in Baltimore, Maryland for one year, then worked variously at Lutheran Hospital, Doctors Hospital and Annapolis General Hospital in the Baltimore area from 1960 to 1965 while preparing to become licensed as a physician in the United States. (Tr. 187-88). He stated that he became licensed to practice in 1964 and he opened a private practice in February 1965 in Baltimore and Annapolis, after which he was self-employed.

Plaintiff testified that he worked part-time as a contract physician on call for Bethlehem Steel Company and as a part-time emergency room physician at Lutheran Hospital from 1965 to 1968. (Tr. 188-89). He said he closed his private practice in 1972. Nasim stated that he had recently obtained W-2 forms from Bethlehem Steel and Lutheran Hospital for that time period but that someone had stolen his bag containing the forms the week before the hearing. (Tr. 190).

Nasim testified that he sustained a broken spine and neck in a motor vehicle accident in 1969. (Tr. 190-91). He said he returned to work as a part-time physician two years later, and also had a fellowship from Johns Hopkins University, which allowed him to work intermittently with elderly patients with chronic diseases at various Baltimore

hospitals from about 1972 to 1974 or 1975. (Tr. 191-92). He stated that he received W-2 forms from these employers at the end of the year.

Plaintiff said that he earned about $8,000 in gross income in 1975, solely from rental income. He said he had no earnings between 1975 and 1980 because he was disabled as a result of an automobile accident. (Tr. 192). He testified that he had a spine operation that rendered him completely disabled. He said he returned to work in 1980 and worked for two years as an operating room assistant physician but that he stopped working as a physician in 1982. Nasim testified that he received only rental income and income from stocks and sales of property after 1982. (Tr. 193).

Plaintiff stated that Exhibit 3 is a list of his gross income from various sources, not just earnings, that he created by copying the figures from his copies of his federal tax returns. (Tr. 193-94). He said that the list is accurate because it was compiled from exact copies of his tax returns. (Tr. 194).

The ALJ asked how long it would take for plaintiff to reconstruct his W-2 records and his attorney stated that it would take 60 days. The ALJ responded, "Okay, that will conclude the hearing this morning." (Tr. 194-95).

7

C.  <u>Record Evidence</u>

It is undisputed that Nasim needs 40 quarters of coverage to qualify for RIB and that the Commissioner's records reflect only 39 quarters of coverage, consisting of 16 quarters of coverage from plaintiff's employment in England and 23 quarters of coverage from his employment in the United States.

D.  <u>Plaintiff's Appeal</u>

    1.  *The ALJ did not err by failing to find that Nasim had earned 16 work credits from part-time employment between 1965 and 1968.*

Plaintiff argues that the ALJ erred by failing to find that Nasim had earned 16 additional work credits from part-time employment between 1965 and 1968, which would mean that he has more than the 40 credits required to qualify for RIB. However, no documentary evidence of such additional work credits appears in the record.

> [T]he Secretary's record of earnings shall be evidence of the amount of wages paid to an individual. Absence of an entry of wages in such record shall be a [sic] presumptive evidence that such alleged wages were not paid to an individual. That presumption, however, can be overcome by evidence of sufficient probative force establishing the claimed wages. . . . In the absence of verification of earnings or credible testimony, the Secretary is required to deny plaintiff's claim of additional quarters of coverage. The claimant is required to prove his case by a preponderance of evidence.

<u>DeJesus-Diaz v. Bowen</u>, No. C87-939, 1989 WL 281931, at *2-3 (N.D. Ohio June 8, 1989) (Bartunek, M.J.) (citing 42 U.S.C. §§ 405(c)(3), (c)(4)(B), (c)(5)(F)(i); <u>Butts v.</u>

Secretary of Health & Human Servs., 706 F.2d 107, 108 (2d Cir. 1983); Kephart v. Richardson, 505 F.2d 1085, 1089 (3d Cir. 1974)).

Nasim testified that he had obtained W-2 forms that documented his part-time employment at Bethlehem Steel and Lutheran Hospital but that the forms had been stolen a week before the hearing. Although he requested that the record be held open for an additional 60 days so that he could reacquire the forms, he never submitted such evidence to the Commissioner, either before the ALJ ruled or before the Appeals Council denied review a full nine months later.

Accordingly, the ALJ's opinion that Nasim lacks the requisite number of quarters of coverage to qualify for RIB is supported by substantial evidence. Durham v. Barnhart, 325 F. Supp. 2d 945, 950 (N.D. Iowa 2004) (Zoss, M.J.); DeJesus-Diaz, 1989 WL 281931, at *2-3. The ALJ did not err in making this finding.

    2.    *The ALJ did not violate plaintiff's due process rights.*

Nasim argues that the ALJ violated his due process rights because the ALJ granted him a 60-day extension of time to submit W-2 forms to document his part-time employment between 1965 and 1968, but the ALJ denied plaintiff's application for RIB before a supposedly scheduled re-hearing 60 days later.

> Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the

9

meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. . . . The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citations and quotation omitted).

"The constitutional right to due process is not, however, an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections." Monk v. Huston, 340 F.3d 279, 282-83 (5th Cir. 2003). To bring a procedural due process claim, "a <u>plaintiff must first identify a protected life, liberty or property interest</u> and then prove that governmental action resulted in a deprivation of that interest." Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001) (emphasis added).

First, in the instant case, Nasim has no property interest in obtaining RIB.

> [A]n individual's right to have quarters of coverage credited to him for Social Security purposes to receive benefits under the Social Security Act is not a contractual right but a right entirely dependent upon relevant statutes and regulations. Review of the record simply indicates that plaintiff was unable to meet the requirements of the statute and regulations. Thus, plaintiff does not present a colorable Fifth Amendment claim.

DeJesus-Diaz, 1989 WL 281931, at *4 (citation omitted). Because Nasim has no property interest in obtaining RIB, the due process clause is not implicated by his complaint.

Second, even if Nasim had a property interest, the record does not establish that the ALJ agreed to hold the record open for 60 days after December 17, 2002. When the ALJ asked how long it would take for Nasim to reconstruct his W-2 records, his attorney said it would take 60 days. The ALJ responded, "Okay, that will conclude the hearing this morning." (Tr. 194-95). This answer is ambiguous as to whether the ALJ intended to grant a 60-day extension. Furthermore, the ALJ stated in his opinion that plaintiff's attorney had requested 60 days to submit additional evidence, but the ALJ did not state that he had granted the request, noting instead that "to date nothing has been submitted." (Tr. 33).

Nonetheless, assuming that the ALJ agreed to hold the record open for 60 days, the record does not support plaintiff's contention that the ALJ scheduled another hearing for 60 days later. To the contrary, the transcript of the December 17, 2002 hearing is clear that the ALJ did <u>not</u> schedule a new hearing. Moreover, no notice of any such hearing appears in the record. Thus, plaintiff was not deprived of his right to a hearing because a hearing was held on December 17, 2002 and no additional hearing was granted, scheduled or required.

The ALJ rendered his decision on January 31, 2003, 15 days before the expiration of the 60-day extension of time. It is clear in the Fifth Circuit that "procedural perfection

in administrative proceedings is not required and procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the decision." Ferguson v. Barnhart, No. 02-849, 2003 WL 21277130, at *1 (E.D. La. May 30, 2003) (Duval, J.) (citing Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)); accord Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989).

It is the ALJ's duty to develop fully and fairly the facts relative to a claim for benefits. Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000); Brock v. Chater, 84 F.3d 726, 727 (5th Cir. 1996). When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence. Id.; Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995).

Reversal of the ALJ's decision for failure to develop the record is appropriate only if the applicant shows that he was prejudiced by the failure. Carey, 230 F.3d at 142; Newton, 209 F.3d at 458; Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." Id. at 557 n.22 (citation omitted) (emphasis added).

In the instant case, Nasim did not provide the W-2 forms or other documentary evidence to support his claim that he had more than 39 quarters of coverage to the ALJ before his decision on January 31, 2003 or to the Appeals Council before its decision on October 31, 2003. Plaintiff had ample time to produce those items at the administrative level. Furthermore, he has not even produced the missing documents to this court even now, which might conceivably provide the basis for a remand to the Commissioner to consider the evidence, if the standards for such a remand were met.

The ALJ's failure to hold the record open for 60 days is not error that prejudices plaintiff's substantive rights, Morris, 864 F.2d at 335; Sartain v. Apfel, No. 99-1596, 2000 WL 193067, at *4 (E.D. La. Feb. 16, 2000) (Mitchell, J.) (citing Mays, 837 F.2d at 1364), because he has not shown at any stage of this case that the alleged evidence exists.

> In a Social Security case, no due process claim is stated when
>
> [plaintiff] has already been afforded a full administrative hearing on [his] claim for benefits, as well as an opportunity for judicial review on the merits. [He] has also been permitted to submit . . . written materials to the Secretary in support of [his] position. . . . Recognizing that due process is a flexible concept, we note that the lack of [another] hearing . . . posed little, if any, additional risk the issue would be wrongly decided, and furthered the government's interest in efficient processing of the claim. We conclude the procedures followed afforded [plaintiff] a "meaningful opportunity to present his case." Such an opportunity was the most that the Constitution required.

Earley v. Department of Health & Human Servs., 776 F.2d 782, 785 (8th Cir. 1985) (quoting Eldridge, 424 U.S. at 349).

Similarly, the Eleventh Circuit has held:

> A review of the record indicates that the ALJ provided plaintiff with due process at the first disability hearing. . . . The failure of the ALJ's investigation to produce the other material does not rise to the level of a constitutional violation. The ALJ had before him sufficient evidence upon which to base his findings. It is not enough to say that had he seen more information his decision would have been different. . . . [W]here the evidence before the ALJ was sufficient to lead to a determination, it is not a due process violation that his investigation failed to produce the additional information.

Holland v. Heckler, 764 F.2d 1560, 1562-63 (citation omitted); see also Gosnell v. Secretary of Health & Human Servs., 703 F.2d 216, 218-19 (6th Cir. 1983) ("[The] statutory scheme . . . requires the claimant to prove all elements of entitlement to [Social Security] insurance benefits. . . . The Constitution does not exempt citizens from the responsibility of maintaining their own records.") (citing Eldridge, 424 U.S. at 336); accord Glazer v. Commissioner of Social Sec., No. 03-3454, 2004 WL 551477, at *3 (6th Cir. Mar. 18, 2004).

Thus, "no ultimate harm resulted from" the ALJ's error, if it was error, in rendering a decision before the expiration of the 60-day extension period because Nasim received a hearing at which he appeared and was represented by counsel and because he

14

had ample opportunity to provide the missing evidence before the Appeals Council ruled. Marshall v. Shalala, 5 F.3d 453, 455 (10th Cir. 1993). Nasim "has failed to state a colorable constitutional claim" for denial of his due process rights. Id.

## CONCLUSION

Substantial evidence in the record supports the ALJ's finding that plaintiff did not have 40 quarters of coverage and was not entitled to RIB. Even if Nasim stated a claim for a deprivation of due process, he received all the process that was constitutionally due to him because he appeared at a hearing at which he was represented by counsel.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 24th day of June, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE